NOT FOR PUBLICATION

FILED
JAMES J. WALDRON, CLERK

MAY 30, 2014

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEW JERSEY

In Re:

**BIG M, INC.,**

Debtor.

Case No.: 13-10233 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

# OPINION

**APPEARANCES:**

Shapiro, Croland, Resier Apfel & Di Iorio, LLP
John P. Di Iorio, Esq.
Continental Plaza II
411 Hackensack Avenue
Hackensack, New Jersey 07601
*Counsel for Joel Seibert*

Lowenstein Sandler LLP
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
Eric H. Horn, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
*Counsel for Debtor*

**<u>THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE</u>**

The Court is presented with a motion ("Motion") filed by Joel Seibert (the "Claimant"), a former employee of Big M (the "Company" or "Debtor"), that seeks an order granting the Claimant's claim for an administrative expense on the grounds that his severance pay is entitled to administrative priority pursuant to 11 U.S.C. §503(b)(1)(A) of the United States Code (the "Bankruptcy Code").

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2013. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought are Sections 503(b)(1)(A)(i) and 503(a) of title 11 of the United States Code.

The Claimant argues that severance pay of $294,000 (the "Claim") is an administrative expense under section 503(b)(1)(A)(i), which should be afforded administrative priority pursuant to section 503(a) of the Bankruptcy Code. The Claimant contends that although the severance agreement between Claimant and the Debtor was not dependent on his length of service, his claim is nevertheless entitled to administrative expense priority because he provided necessary post-petition services to the Debtor.

The Debtor contends that the Claim should not be afforded administrative expense priority. The Debtor asserts that the severance agreement relates back to a prepetition agreement with the Claimant, which did not arise due to length of service or in lieu of notice for entitlement to severance; thus, the Claim must be governed under the general rules effecting administrative expense priority.

**RELEVANT FACTS**

The Claimant began employment with the Debtor on or about June 4, 2001. In or about 2002, the Claimant became Vice President/Director of Real Estate of the Company. He was responsible for all real estate related issues of the Debtor, which included approximately 175 store leases in seven states. His other duties included managing the existing real estate portfolio planning, long and short term strategic growth/expansion planning, coordinating and managing activities with other departments of the Debtor, reviewing capital expense budgets and requirements, and monitoring trends, such as new developments or new types of retail developments. During this time, he had no employment agreement with the Debtor.

In or about 2011, the Debtor hired Glenn Langberg ("Langberg") as the Chief Restructuring Officer to address the significant financial issues the Debtor was experiencing. The Claimant asserts that in order to incentivize him and other key employees to remain employed by the Debtor in its attempt to restructure its debts or conduct an orderly liquidation, the Debtor offered a severance agreement dated October 2011, which Claimant accepted (the "Severance Agreement").

The Severance Agreement provides that if the Debtor were to terminate the Claimant's employment without cause, or if the Claimant terminates employment with the Debtor for good reason, the Debtor shall make payments to the Claimant at the rate of his base salary for a period of fifteen (15) months from the termination date. "Good Reason" was defined to mean various actions taken by the Debtor, without Claimant's express written consent, including

> (a) [t]he assignment to [Seibert] of any position, title, duties, responsibilities or status inconsistent with [Seibert's] position, title, duties, responsibilities and status with the Company on the [date of the Severance Agreement] . . . ; and

4

>    (b) [t]he failure by the [Debtor] to obtain an assumption in writing of the obligations of the [Debtor] to perform this Agreement by any successor to the [Debtor] and to provide such assumption to [Seibert].

(Seibert Decl. Ex. A, 2-3). After Langberg was hired, management determined to effect a going concern sale of the Debtor. At that point, the Claimant alleges that his duties changed. His primary duties became renegotiating lease terms with the goal of reducing expenses to make the Debtor more attractive to potential investors or purchasers.

On January 6, 2013, the Debtor filed a voluntary chapter 11 bankruptcy proceeding (the "Petition Date"). At the outset of the bankruptcy proceeding, the Debtor sought to sell substantially all of its assets and provide for an orderly liquidation of the Company. The Claimant provided services to the Debtor with regard to a sale of substantially all of its assets, including, but not limited to, negotiating waivers and compromises of amounts due under leases and lease concessions, resulting in a reduction of the cure amount due under real estate leases of approximately $1 million, and a reduction of future occupancy costs in excess of $7 million. After the Petition Date, the Claimant asserts that he was assured by various officers including Langberg that his Severance Agreement would be honored and he therefore did not seek other employment. To the contrary, Langberg declares that: "At no time did I, nor any member of my staff (at GRl) assure Mr. Seibert that he would be entitled to severance – as an administrative expense – if he continued to work for the Debtor during the course of the Chapter 11 case." (Langberg Decl. ¶ 8). The Claimant asserts that even though he could have terminated his employment with the Debtor for good reason because his duties and responsibilities changed, triggering his entitlement to severance, the Claimant remained employed by the Debtor through the closing of the sale of the Debtor's assets. The Claimant was paid his full salary during his five months of post-petition employment.

On May 23, 2013, substantially all of the Debtor's assets were sold to YM, LLC, USA (the "Purchaser") pursuant to an Asset Purchase Agreement dated April 5, 2013 (the "APA"). The Debtor did not require the Purchaser to assume the Claimant's Severance Agreement and thus, the Severance Agreement was rejected. The Claimant did not receive prior notice of the Debtor's purported rejection of the Severance Agreement and was terminated, along with all other employees of the Debtor, upon a closing of the sale on or about May 28, 2013. At the time of the Claimant's termination, his salary was $235,000 per annum, and he retained thirty-one (31) weeks of accrued vacation prior to the Petition Date.

## DISCUSSION

I. **Whether the Severance Payment is an Administrative Expense**

    A.    <u>**Severance Claims**</u>

The Third Circuit has afforded administrative expense priority for severance pay of employees who provided services post-petition. In the seminal case *In re Public Ledger, Inc.*, 161 F.2d 762 (3d Cir. 1947), the Third Circuit held that two different types of severance pay were classified as administrative expense claims. In *Public Ledger*, qualified employees were entitled to two working days' notice before being discharged and such notice was not provided. The Third Circuit held that severance pay claims, in lieu of notice of termination, are to be construed as an administrative expense. *Id.* at 770. In addition, other employees in *Public Ledger* were entitled to severance pay based on their length of service to the company. As to those employees, the Third Circuit held that only the portion of the pay that was earned post-petition should be given priority as an administrative expense.

The Claimant argues that his severance agreement with the Debtor constitutes an administrative expense under section 503(b)(1)(A)(i) of the Bankruptcy Code. Although the

6

Severance Agreement arose pre-petition, the Claimant contends that the severance payment is entitled to administrative expense treatment based on the benefit rendered to the Debtor post-petition.  Claimant asserts that his severance payment was triggered upon the hiring of Langberg as the Debtor's Chief Restructuring Officer, who altered the Claimant's responsibilities.  Based on the language contained in the Severance Agreement, the Claimant believed that his change in responsibilities constituted "good reason," and he is thus entitled to his severance payment.  After claiming to being assured by management that the Severance Agreement would be honored post-petition, the Claimant continued to render services to the Debtor, which, the Claimant asserts, benefitted the estate.

As previously noted, in *Public Ledger*, 161 F.2d at 773, the court explicitly stated that two different types of severance pay are entitled to administrative expense claims:  those that are in lieu of notice of termination and those that are based upon length of service to the employer.  Here, it is undisputed that the Claim does not fall within the realm of severance payments contemplated in *Public Ledger*.  While not satisfying the *Public Ledger* framework, the Claimant distinguishes his case by reference to *In re Hechinger Inv. Co. of Delaware*, 298 F.3d 219 (3d Cir. 2002).  There, the employees sought payment of severance benefits based on length of service ("Stay on Benefits") as administrative expenses.  The court found that the consideration furnished by the employees was the work they completed from the time they agreed to the Stay on Benefits until the time the store closed, and the amount due had to be apportioned to the work done post-petition. *Id.* at 227.  Claimant distinguishes his case from *Hechinger* by noting that his Severance Agreement was not based on length of service, that his severance could be triggered by both termination without cause or resignation for good reason, and that despite having good

7

reason to leave, he remained employed for the Debtor post-petition. The Claimant's distinctions are ill founded.

The Claimant also relies on *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir. 1976). In *Mammoth Mart*, the employees were paid for an amount of severance upon their termination and sought additional severance based upon prior policy. The court found that since no part of the claims arose from services performed for the debtor post-petition, none of the claims was entitled to administrative priority. *Id.* at 954. The Claimant relies on this case for the language that a claim for severance pay "will depend upon the extent to which the consideration supporting the claim was supplied during the reorganization." *Id.* at 955. He maintains that such consideration was present when he continued to render valuable and beneficial services to the Debtor, despite being entitled to terminate employment with Debtor for good reason. The Claimant further cites to *In re Allegheny Int'l Inc.,* 118 B.R. 276 (Bankr. W.D. Pa. 1990) for support, in which the court held that where an employment contract allows for terminated employees to seek severance pay equal to their salaries for a specified period of time, the entire sum is entitled to be treated as having administrative priority, and the consideration for receiving the benefit is being an employee in good standing at the time of termination. *Id.* at 280.

Additionally, the Claimant cites to *In re Plymouth Rubber Co., Inc.*, 336 B.R. 16, 20 (Bankr. D. Mass. 2005), wherein the court held that a new promise of severance pay to induce employees to remain employed, coupled with a benefit to the debtor, will result in administrative priority. The Claimant relates to the *Plymouth Rubber* holding in that he claims he was induced to stay employed with the Debtor by top management and that he provided substantial and integral work to the Debtor that resulted in reduced lease cure claims by $1 million and reduced future occupancy costs of at least $7 million. Whether the Claimant was truly induced by

8

management to remain employed with the Debtor is in issue but the correct inquiry here is with respect to the benefit the Debtor received.[1]

The Debtor's objection to the Claimant's motion for administrative expense status is based on the contention that the Severance Agreement is a general unsecured claim, and thus not entitled to priority. The Debtor maintains that absent a severance agreement made pursuant to the *Public Ledger* framework, i.e. length of service or in lieu of notice, which are recognized to be entitled to administrative expense, the Severance Agreement is to be governed under the general rules governing administrative expense priority. In support, the Debtor cites to *Klemick v. Able Labs.*, 2007 WL 952030 (D.N.J. Mar. 28, 2007) and *In re Hudson Healthcare*, No. 11-33014 (DHS), 2012 WL 4088866 (Bankr. D.N.J. Sept. 17, 2012), and emphasizes that the Severance Agreement arose pre-petition between the Debtor and the Claimant, more than one year prior to the Petition Date. Additionally, the Debtor relies on *In re M Group*, 268 B.R. 896, 901 (Bankr. D. Del. 2001), for the proposition that the date the Severance Agreement was signed was when liability took place, not when the acts accrued to trigger the severance agreement. In *In re M Group,* the Court found that the fact that the employee continued to be employed with debtors post-petition "is insufficient to establish a transaction with the debtor in possession for administrative priority purposes." 268 B.R. at 902 (citing *In re Commercial Fin. Servs., Inc.*, 246 F.3d at 1294).

Based on the foregoing, the only consideration owed post-petition to the Claimant was his salary, which was paid in full. The Severance Agreement did not arise post-petition, was not based on length of service or in lieu of notice, and was not approved or authorized by this Court.

---

[1] If, in fact, management made a promise of priority it would be unenforceable under the Bankruptcy Code without an Order of the Court, after notice and hearing, affording administrative priority status to the Claimant's Severance Agreement.

9

Therefore, the general rules governing administrative expense priority pursuant to section 503(b)(1)(A) shall be controlling.

      B.      **Administrative Expenses under 503(b)(1)(A)(i)**

Section 503(b)(1)(A)(i) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate, including wages, salaries, and commissions for services rendered after the commencement of the case."  Under section 507, administrative expenses recognized under section 503(b) are awarded second payment priority, in order to "encourage the provision of goods and services to the estate, and to compensate those who expend new resources attempting to rehabilitate the estate." *In re Pulaski Highway Express, Inc.*, 57 B.R. 502, 505 (Bankr. M.D. Tenn. 1986) (citing *In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984)).  Courts have established a demanding criterion for determining whether a claim should be afforded administrative priority. *In re Interstate Grocery Distribs. Sys., Inc.*, 267 B.R. 907, 913 (Bankr. D.N.J. 2001).  Allowances for administrative expenses are "narrowly construed for [the] proper protection of other creditors." *In re Molnar Bros.*, 200 B.R. 555, 558 (Bankr. D.N.J. 1996).  Thus, the burden of proving entitlement to an administrative expense claim is on the claimant and must be proven by a preponderance of the evidence. *In re Grand Union Co.*, 266 B.R. 621, 628 (Bankr. D.N.J. 2001).  In order to sustain its burden of proof and qualify for administrative treatment under Section 503 of the Bankruptcy Code, a claimant must demonstrate that the costs which the Claimant seeks "provided an actual benefit to the estate . . . and were necessary to preserve the value of the estate assets." *In re ID Liquidation One, LLC*, 503 B.R. 392, 399 (Bankr. D. Del. 2013) (citing *Bernard Techs., Inc.,* 342 B.R. at 177 (quoting

10

*In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999))); *see also In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976).

        1.    <u>The Claim is Not an Actual and Necessary Cost and Expense of Preserving the Estate</u>

Under 503(b)(1)(A), two conditions must be met for a claim to constitute an administrative expense. It must be created post-petition and must be an "actual, necessary cost[] and expense[]" of preserving the estate. 11 U.S.C. § 503(b)(1)(A). To be an actual and necessary expense, it must substantially and directly benefit the estate. *In re Williams*, 165 B.R. 840, 841 (Bankr. M.D. Tenn. 1993). "Services that indirectly, incidentally, or tangentially benefit the estate do not qualify for the administrative expense priority." *In re Hemingway Transport Inc.*, 954 F.2d 1, 5 (1st Cir. 1992). *In re Williams*, 165 B.R. at 842 (finding that attorney's fees expended post-petition for the purpose of facilitating the purchase of Debtor's business were incidentally and tangentially related to preserving the estate).

Assuming arguendo that the Claimant was able to prove that he provided adequate consideration for his Severance Agreement to be construed as arising post-petition, the Claimant must also show that his work benefitted the estate. The Claimant emphasizes that his duties significantly changed after Langberg was hired, namely to renegotiate lease terms, and continued to benefit the Debtor by performing those duties post-petition, which amounted to a benefit to the estate. However, the Claimant fails to specify how renegotiating lease terms was significantly different from his pre-petition responsibilities, which he quotes as being the "coordination and management of activities with other departments at the Company including: Construction Department, Legal & Finance (to extent real estate related), lease administration (regarding real estate tax, common area maintenance and other additional rent items at issue or otherwise in dispute) . . . ." (Seibert Decl. ¶ 2). The Claimant's position is distinguishable from *In re*

*Plymouth Rubber*, 336 B.R. at 16, where the court found there was significant benefit supplied to the debtor by the employees remaining employed post-petition because it was necessary to avoid a turnover risk that would significantly disrupt the company and affect the debtor's ability to restructure under chapter 11. Here, the work the Claimant provided was handsomely paid for through his salary, was not of such significance to make the Debtor's plan of liquidation hinge on his services, nor would the liquidation be unduly disruptive if Claimant resigned.

The Debtor highlights that the work the Claimant provided post-petition was no different than the work he conducted pre-petition and prior to the hiring of Langberg. Here, the Claimant's employment did not amount to a necessary expense and expense of preserving the estate. To hold otherwise would in all likelihood require similar findings for most employees with pre-petition severance agreements. *See*, *In re M Grp*, 268 B.R. at 896 (rejecting claimant's argument that he provided a sufficient benefit to the debtor's estate by remaining employed); *see also Klemick v. Able Labs.*, 2007 WL 952030 at *1, (rejecting claimant's argument that the work she provided to the debtor post-petition was a benefit to the estate).

    2.    <u>The Claim is Not the Result of a Transaction Between the Claimant and the Debtor in Possession</u>

Severance benefits that are not based on length of service or in lieu of termination become an entitlement immediately upon signing the employment agreement. *See In Re M Grp., Inc.*, 268 B.R. at 901 ("[I]t is not determinative that payment of a lump sum was contingent upon termination, an event which occurred post-petition. In determining administrative priority, courts look to 'when the acts giving rise to liability took place, not when they accrued.'").

Here, it is clear that the prepetition Severance Agreement was not a transaction with the Debtor. Rather, it arose from a transaction that occurred one year and three months before the Petition was filed.

**CONCLUSION**

For the above stated reasons, the Court finds that the Claim relates back to a prepetition severance agreement and was not an actual and necessary cost of preserving the estate. The Claim is not entitled to administrative priority status under 11 U.S.C. § 503(b)(1)(A).

An Order in conformance with this Opinion has been entered by the court and a copy attached hereto.

*s/ Donald H. Steckroth*
_____

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: May 30, 2014